**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

JACKIE LEE DONLEY,

      Petitioner,

v.                                                Case No. 3:07-cv-581-J-32JBT

WALTER A. MCNEIL,[1] et al.,

      Respondents.

_____

## ORDER

### I. Status

    Petitioner, an inmate of the Florida penal system, initiated this action by filing a pro se Petition (Doc. #1) for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  He challenges his 2004 state court (Duval County) conviction for possession of cocaine with intent to sell or deliver on the following grounds: (1) he was subjected to an unreasonable search and seizure, in violation of the Fourth Amendment; (2) he received ineffective assistance of counsel for counsel's failure to raise a defense; (3) the trial court erred in denying his motion for a new trial: (4) he was denied a fair trial, due process of law and equal protection of the law when he was required to select a jury while in his prison uniform, and counsel was ineffective for failing to object or to advise Petitioner of his right to appear in street clothes;

_____

[1] Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Walter A. McNeil, the current Secretary of the Florida Department of Corrections, is substituted for James R. McDonough as the proper party Respondent having custody of the Petitioner.

1

(5) he was denied conflict-free counsel during voir dire; and (6) he was denied a fair trial, due process of law and the effective assistance of counsel when he was required to choose jurors from a venire that did not contain any African-Americans.

Respondents filed an Answer to Petition for Writ of Habeas Corpus (Doc. #14) (hereinafter Response).  Petitioner has replied. See Petitioner's Reply to State's Answer Petition (Doc. #17).  Thus, this case is ripe for review.

## II. State Court Procedural History

After a trial by jury, Petitioner was found guilty as charged of possession with intent to sell or deliver cocaine.   Ex. A; Ex. H; Ex. I.   He was sentenced to ten years of imprisonment.  Ex. L.

On direct appeal, he raised the following claims: (1) the trial court erred in denying his motion to suppress; (2) the trial court erred in overruling a defense objection to the qualification of Officer Turner as an expert in street narcotics trade; and (3) the trial court erred in denying the defense motion for judgment of acquittal because there was no evidence that the amount of cocaine was inconsistent with personal use.  Ex. N.  The First District Court of Appeal per curiam affirmed, without issuing a written opinion.  Ex. Q.

Thereafter, Petitioner filed a motion for post-conviction relief pursuant to Fla. R. Crim. P. 3.850 (hereinafter 3.850 motion), in which he raised the following claims: (1) his trial attorney was ineffective for allowing the prospective jurors to see him in prison garb during jury selection; (2) he was denied a fair trial because the jurors heard about an unrelated case during voir dire, and counsel was ineffective for failing to object; and (3) he was denied effective assistance of counsel due to a conflict of interest.  Ex. R.  The circuit court denied

2

the motion, Ex. S, and upon Petitioner's appeal, the First District Court of Appeal summarily affirmed the circuit court's order.  Donley v. State, 930 So.2d 623 (Fla. 1st DCA 2006) (unpublished table decision); Ex. W.[2]

### III.  Evidentiary Hearing

"In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (citation omitted).  "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing."  Id.  The pertinent facts of this case are fully developed in the record before the Court.  Because this Court can "adequately assess [Petitioner's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004), an evidentiary hearing will not be conducted.

### IV.  Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104-132, 110 Stat. 1214 (hereinafter AEDPA), this Court's review "is 'greatly circumscribed and highly deferential to the state courts.'  Crawford v. Head, 311 F.3d 1288, 1295 (11th Cir. 2002)." Stewart v. Sec'y, Dep't of Corr., 476 F.3d 1193, 1208 (11th Cir. 2007).

> [Section] 2254(d) allows federal habeas relief for a claim adjudicated on the merits in state court only if the state court

---

[2] Respondents assert that the Petition was timely filed.  See Response at 3.

adjudication[3] resulted in a decision that was: "(1) . . . contrary to, or involved an unreasonable[4] application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Marquard, 429 F.3d at 1303.[5]  The phrase "clearly established Federal law," as used in § 2254(d)(1), encompasses only the holdings, as opposed to the dicta, of the United States Supreme Court as of the time of the relevant state court decision.  See Carey v. Musladin, 549 U.S. —, 127 S.Ct. 649, 653, 166 L.Ed.2d 482 (2006) (citing Williams v. Taylor, 529 U.S. 362, 412, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000)); Osborne v. Terry, 466 F.3d 1298, 1305 (11th Cir. 2006).

Id. at 1208-09.

"AEDPA also requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.' § 2254(e)(1)."  Schriro, 550 U.S. at 473-74.  "This presumption of correctness applies equally to factual determinations made by state trial and appellate courts."  Bui v. Haley, 321 F.3d 1304, 1312 (11th Cir. 2003) (footnote omitted) (citing Sumner v. Mata, 449 U.S. 539, 547 (1981)).

---

[3] For a state court's resolution of a claim to be an adjudication on the merits, so that the state court's determination will be entitled to deference for purposes of federal habeas corpus review under AEDPA, all that is required is a rejection of the claim on the merits, not an opinion that explains the state court's rationale for such a ruling.  Wright v. Sec'y for the Dep't of Corr., 278 F.3d 1245, 1255 (11th Cir. 2002), cert. denied, 538 U.S. 906 (2003).

[4] "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable - a substantially higher threshold."  Schriro, 550 U.S. at 473 (citing Williams v. Taylor, 529 U.S. 362, 410 (2000)).

[5] Marquard v. Sec'y for Dep't of Corr., 429 F.3d 1278, 1303 (11th Cir. 2005), cert. denied, 547 U.S. 1181 (2006).

## V. Findings of Fact and Conclusions of Law

### A. Ground One

Petitioner asserts that he was subjected to an unreasonable search and seizure, in violation of the Fourth Amendment.  Respondents contend, and this Court agrees, that under the principles of Stone v. Powell, 428 U.S. 465 (1976), federal habeas review of Petitioner's illegal search and seizure claim is not cognizable in this proceeding because Petitioner had a full and fair opportunity to litigate his Fourth Amendment issue in state court.

> [W]hen "the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search and seizure was introduced at his trial." Stone v. Powell, 428 U.S. 465, 494, 96 S.Ct. 3037, 3052, 49 L.Ed.2d 1067 (1976) (footnotes omitted). Thus, before [this Court] may review the merits of [Petitioner's] Fourth Amendment claim, [he] must demonstrate that the state courts deprived him of a full and fair opportunity to litigate the claim.
>
> In Tukes v. Dugger, 911 F.2d 508, 513-14 (11th Cir. 1990), [the Eleventh Circuit Court of Appeals] said this in applying Stone: "For a claim to be fully and fairly considered by the state courts, where there are facts in dispute, full and fair consideration requires consideration by the fact-finding court, and at least the availability of meaningful appellate review by a higher state court."

Peoples v. Campbell, 377 F.3d 1208, 1224 (11th Cir. 2004), cert. denied, 545 U.S. 1142 (2005).

In this case, defense counsel filed a pretrial motion to suppress.  Ex.[6] B.  The trial court heard testimony on the motion and allowed both parties to present argument.  Ex. C. This Court has reviewed the record of the suppression hearing and finds Petitioner had a full and fair opportunity to argue his Fourth Amendment claim in state court.  In addition, on direct appeal, Petitioner argued that the trial court erred in denying his motion to suppress, and the trial court's decision with regard to this issue was affirmed.  Ex. N; Ex. Q.  In sum, Petitioner was afforded every full and fair opportunity to litigate and have adjudicated his Fourth Amendment claim; therefore, under <u>Stone v. Powell</u>, he should not be permitted to further litigate the claim in this Court.  Thus, this ground for relief is barred.

## B. Ground Two

Petitioner contends that he received ineffective assistance of counsel for counsel's failure to raise a defense based upon the state's failure to prove constructive possession. Petition at 4B-4C.  As noted by Respondents, it appears that Petitioner is attempting to raise both an ineffective assistance of counsel claim and a sufficiency of the evidence claim in this ground.  Respondents contend that both claims are procedurally barred because they were never presented to the state courts.  This Court agrees.

As the above-summarized state court procedural history reflects, Petitioner never raised this ineffective assistance of counsel claim in state court.  Additionally, insofar as Petitioner attempts to argue that the evidence was insufficient to establish that he had

---

[6] The Court hereinafter refers to the Exhibits to Answer to Petition for Writ of Habeas Corpus (Doc. #15) as "Ex."

constructive possession of the cocaine at issue, this insufficiency claim was never presented to the state courts.[7]

A petition for writ of habeas corpus should not be entertained unless the petitioner has first exhausted his state remedies.  See  Castille v. Peoples, 489 U.S. 346, 349, reh'g denied, 490 U.S. 1076 (1989); Rose v. Lundy, 455 U.S. 509 (1982).  "In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." Turner, 339 F.3d at 1281 (quoting O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999)). "This exhaustion doctrine 'is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts.'" Turner, 339 F.3d at 1281 (quoting O'Sullivan, 526 U.S. at 845).

It would be futile to dismiss this case to give Petitioner the opportunity to exhaust this ground because the ineffective assistance of counsel claim could have and should have been raised in Petitioner's 3.850 motion and the insufficiency of the evidence claim could have and should have been raised on direct appeal.  Accordingly, these claims have been procedurally defaulted.

"Procedural defaults in state courts will foreclose federal court review, absent a showing of cause and prejudice." Parker v. Sec'y for the Dep't of Corr., 331 F.3d 764, 770 (11th Cir. 2003) (citing Wainwright v. Sykes, 433 U.S. 72 (1977)), cert. denied, 540 U.S.

---

[7] As noted previously, on direct appeal, Petitioner argued that the trial court erred in denying the defense motion for judgment of acquittal because there was no evidence that the amount of cocaine was inconsistent with personal use.  However, Petitioner never argued on direct appeal that the evidence was insufficient to prove constructive possession.

1222 (2004).  "[A] federal court may also grant a habeas petition on a procedurally defaulted claim, without a showing of cause or prejudice, to correct a fundamental miscarriage of justice."  Fortenberry v. Haley, 297 F.3d 1213, 1222 (11th Cir. 2002) (per curiam) (citing Murray v. Carrier, 477 U.S. 478, 495-96 (1986)), cert. denied, 538 U.S. 947 (2003).  The fundamental miscarriage of justice exception is only available in extraordinary cases upon a showing of "'actual' innocence" rather than mere "'legal' innocence."  Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (citations omitted), cert. denied, 535 U.S. 926 (2002).

Petitioner has not shown both cause excusing the default and actual prejudice resulting from the bar.  Furthermore, he has not shown that he is entitled to the fundamental miscarriage of justice exception.  Thus, the Court will not address the merits of Petitioner's procedurally barred claims in ground two.

## C. Ground Three

Petitioner asserts that the trial court erred in denying his motion for a new trial, thereby denying him a fair and impartial trial.  Petition at 4D-4E; Reply at 5-6.  Respondents contend, and this Court agrees, that this claim is procedurally barred because Petitioner never exhausted this issue in state court.

It would be futile to dismiss this case to allow Petitioner to exhaust this claim because it could have and should have been raised on direct appeal.  Accordingly, this claim has been procedurally defaulted.  Petitioner has not shown both cause excusing the default and actual prejudice resulting from the bar.  Furthermore, he has not shown that he is entitled to the fundamental miscarriage of justice exception.  Thus, the Court will not address the merits of Petitioner's procedurally barred claim in ground three.

### D. Ground Four

Petitioner contends that he was denied a fair trial, due process of law and equal protection of the law when he was required to select a jury while in his prison uniform and counsel was ineffective for failing to object and to advise Petitioner of his right to appear in street clothes.  "The Sixth Amendment guarantees criminal defendants effective assistance of counsel.  That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citations omitted).

> The clearly established federal law for ineffective assistance of counsel claims was set forth by the U.S. Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To establish a claim of ineffective assistance of counsel, first, "the defendant must show that counsel's performance was deficient . . . [which] requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687, 104 S.Ct. at 2064.  Second, the defendant must show that counsel's deficient performance prejudiced him.  Id.  That is, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694, 104 S.Ct. at 2068.

Gaskin v. Sec'y, Dep't of Corr., 494 F.3d 997, 1002 (11th Cir. 2007) (per curiam).  Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Ward v. Hall, 592 F.3d 1144, 1163 (11th Cir. 2010) (citation omitted).

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> The question "is not whether a federal court believes the state court's determination" under the Strickland standard "was incorrect but whether that determination was unreasonable - a substantially higher threshold." Schriro, supra, at 473, 127 S.Ct. 1933.   And, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard. See Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations").

Knowles v. Mirzayance, 129 S.Ct. 1411, 1420 (2009).  Thus, "it is important to keep in mind that '[i]n addition to the deference to counsel's performance mandated by Strickland, the AEDPA adds another layer of deference--this one to a [S]tate court's decision--when we are considering whether to grant federal habeas relief from a [S]tate court's decision.'" Williams v. Allen, 598 F.3d 778, 789 (11th Cir. 2010) (alteration in original) (quoting Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004)).

Petitioner raised this claim in his 3.850 motion, and the court adjudicated it as follows:

> Defendant made no objection during the trial and the matter was addressed by Defendant's counsel as a result of defendant filing a grievance against said counsel, in which counsel stated "we had discussed his wearing a suit."  (See pages 4-12 of defendant's motion.)[8]   Counsel also expressly addressed

---

[8] In his 3.850 motion, Petitioner alleged that counsel's response to the bar grievance stated the following with respect to this issue:

> As for me[,] Mr[.] Donley[']s embarrassment because he was in prison garb[,] we had discussed him wearing a suit[.]  He was aware of his Court dates and knew when we were going to pick a jury and he was in constant contact with his family.  Mr[.]

> defendant's appearance with the venire (pages 342-344 of transcript of jury selection on February 20, 2004, and attached hereto)[9].

Ex. S at 1.

Insofar as Petitioner contends that he was denied a fair trial, due process of law and equal protection of the law when he was required to select a jury while in his prison uniform, the circuit court properly found that Petitioner was not entitled to relief because counsel did not object. See Estelle v. Williams, 425 U.S. 501, 512-13 (1976) ("although the State cannot, consistently with the Fourteenth Amendment, compel an accused to stand trial before a jury while dressed in identifiable prison clothes, the failure to make an objection to the court as to being tried in such clothes, for whatever reason, is sufficient to negate the presence of compulsion necessary to establish a constitutional violation"); United States v. Chavez, 584 F.3d 1354, 1362 n.8 (11th Cir. 2009) (stating that, if the defendant had been tried in prison clothes, the lack of objection is sufficient to negate the presence of compulsion necessary to establish a constitutional violation worthy of noting as plain error). Although the circuit court did not specifically address the performance and prejudice prongs of the ineffectiveness claim, it appears that the court implicitly found that counsel's performance

---

> Donley is not new to the criminal justice system, he did not need me to tell him to wear a suit.

Ex. R at 4 (some capitalization omitted).

9 Ex. F at 88-90 (the Court cites the page numbers on the upper right corner of the page).

was not deficient.[10]  The appellate court summarily affirmed the denial of the 3.850 motion.

Thus, there are qualifying decisions from the state trial and appellate courts.

The Court must next consider the "contrary to" and "unreasonable application" components of the statute.   "It is the objective reasonableness, not the correctness per se, of the state court decision that we are to decide." Brown v. Head, 272 F.3d 1308, 1313 (11th Cir. 2001), cert. denied, 537 U.S. 978 (2002).  Upon a thorough review of the record and the applicable law, the state courts' adjudications of this claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Thus, Petitioner is not entitled to relief on this claim.[11]

---

[10] Although this Court is of the opinion that counsel's performance in failing to ensure that Petitioner appeared at voir dire in street clothes and in failing to object when he appeared in prison garb may well be deficient, this Court ultimately concludes that Petitioner was not prejudiced by counsel's arguably deficient performance.  See Carter v. United States, 288 Fed.Appx. 648, 650 (11th Cir. 2008) (per curiam) (not selected for publication in the Federal Reporter) (assuming, without deciding, that counsel's failure to arrange for the defendant to appear in civilian clothing rather than in prison attire during his trial was beyond the range of reasonable attorney conduct, but finding the defendant failed to demonstrate that he was prejudiced by counsel's performance because the evidence against him was so strong that there was not a reasonable probability that a jury would have found him not guilty but for the fact that he appeared at trial in prison attire).

[11] This Court also finds the ineffectiveness claim to be without merit because the evidence against Petitioner was overwhelming.  See Response at 21-22.  Thus, Petitioner cannot demonstrate that he was prejudiced by counsel's alleged error.

### E. Grounds Five and Six

In ground five, Petitioner contends that he was denied conflict-free counsel during voir dire.  Petition at 4G-4H.  In ground six, he asserts that he was denied a fair trial, due process of law and the effective assistance of counsel when he was required to choose jurors from a venire that did not contain any African-Americans.  Id. at 4I-4J.

The following facts are pertinent in assessing these two claims.  A consolidated voir dire was conducted in Petitioner's case and a totally unrelated case with a different defendant (Mark Silvis), with juries for both cases being selected from the same venire.  Ex. F.  Mark Silvis was charged with possession of cocaine and possession with intent to sell cocaine, and his jury was selected first.  Id. 11-75.  After the jury was selected in the Silvis case, "no African Americans [were] left in the jury pool."  Id. at 88.

Both Mark Silvis and the Petitioner were represented by Mr. Ross Germano, Esquire. Id. at 11, 78.  Thus, Petitioner contends that an actual conflict of interest prevented Mr. Germano from objecting to the prospective jurors' hearing prejudicial and extrinsic information about the charges in the Silvis case.  He also asserts that the conflict prevented Mr. Germano from objecting when Petitioner, who is black, was left with an all-white jury.

Petitioner raised these issues in grounds two and three of his 3.850 motion, and the circuit court adjudicated the claims as follows:

> (ii) Selecting Multiple Juries From One Panel.  The law in Florida allows this practice.  See, e.g., Rock v. State, 638 So.2d 933 (Fla. 1994).
>
> (iii) Selecting Multiple Juries From One Panel.  See (ii) above, and Improper Venue.  There was no indication that the prospective jurors were not selected or drawn according to law.

13

> This allegation was also part of defendant's Motion for New Trial, which was denied on March 2, 2004, (copy attached hereto)[12], and is the subject of an appeal currently pending before the First District Court of Appeal.[13]

Ex. S at 1.

In the case cited by the circuit court, Rock v. State, 638 So.2d 933 (Fla. 1994), the Florida Supreme Court rejected a similar ineffectiveness claim based upon an alleged conflict of interest. The jury in that case was selected during a consolidated procedure in which juries for three unrelated criminal cases were chosen from one venire of forty people. The attorney for the appellant, Terry Jerome Rock, also represented one of the other defendants in the unrelated cases. Mr. Rock's attorney orally objected "to this type of K-Mart special jury selection where we are having all three defendants in the same room based on the violation of the [Six]th [A]mendment of the United States Constitution." Rock, 638 So.2d at 934 (alteration in original). After the judge overruled her objection, counsel filed a written motion "in which she argued that she could not adequately represent Rock because she would 'have to co-mingle the interest of one Defendant with that of the other Defendant during this simultaneous jury selection process.'" Id. On Rock's direct appeal, he argued

---

[12] Copies of the motion for new trial and the order denying the motion have been provided to this Court as Ex. J.

[13] Although Petitioner argued in his motion for new trial that he did not receive a fair trial due to the exclusion of all African-Americans from the venire, see Ex. J at 1, he did not raise this issue on direct appeal. See Ex. N at 2 (noting that "[w]hile the motion for new trial lists a potential issue regarding jury selection, the defense accepted the jury panel without reservation").

that the trial court erred in conducting simultaneous jury selection for his case and the two

unrelated cases.  The First District Court of Appeal affirmed, stating:

> In order to be entitled to a reversal, an appellant would have to demonstrate actual conflict or prejudice.  Foster v. State, 387 So.2d 344 (Fla. 1980).  Actual conflict exists if counsel's course of action is affected by conflicting representation, i.e., where there is divided loyalty with the result that a course of action beneficial to one client would be damaging to the interest of another client.  Main v. State, 557 So.2d 946, 947 (Fla. 1st DCA 1990).  To show actual conflict, one must show that a lawyer not laboring under the claimed conflict could have employed a different defense strategy and thereby benefitted the defense.  McCrae v. State, 510 So.2d 874, 877 n.1 (Fla. 1987).  Only when such an actual conflict is shown to have affected the defense is there prejudicial denial of the right to counsel.  Id.
>
> The instant case only raises speculative nonspecific objections concerning conflict.  The record fails to demonstrate that appellant's attorney was required to choose between alternate courses of action due to the consolidated jury selection or that a lawyer not laboring under the claimed conflict would have employed a different strategy during jury selection that would have benefitted the defense.  There is no allegation that the nature of the charges against the other defendant was somehow prejudicial to appellant or that any question asked by one of the other attorneys was objectionable.  There is no allegation that the method of instructing the jury somehow prejudiced the defense.  Absent a demonstration of a conflict which is unique to a particular set of cases or particular defendants, we find no problem with the simultaneous jury selection process which was utilized.

Rock v. State, 622 So.2d 487, 489 (Fla. 1st DCA 1993).

In his post-conviction proceedings, Mr. Rock asserted that he was denied the effective

assistance of counsel due to the consolidated jury procedure and argued that the First

District Court of Appeal should not have required him to show an actual conflict to obtain a

reversal on direct appeal, especially where his attorney represented one of the other two

defendants during the consolidated jury selection.  The Florida Supreme Court rejected this

argument:

> There is no joint representation where, as here, one lawyer represents defendants in unrelated cases during jury selection only.  Thus, the case law pertaining to joint representation does not apply here.  In cases such as Rock's, the defendant has the burden of showing actual conflict or specific instances of prejudice.  Rock's challenges to the jury selection process were generalized and nonspecific.  Thus, his case does not warrant reversal.

Rock, 638 So.2d at 935.

As noted previously, the circuit court's order denying the 3.850 motion was summarily

affirmed.  Thus, there are qualifying decisions from the state circuit and appellate courts.

Upon a thorough review of the record and the applicable law, the state courts' adjudications

of these claims were not contrary to clearly established federal law, did not involve an

unreasonable application of clearly established federal law, and were not based on an

unreasonable determination of the facts in light of the evidence presented in the state court

proceedings.[14]  Thus, Petitioner is not entitled to relief on the basis of these claims.[15]

---

[14] This does not mean that the consolidated jury selection procedure is without potential pitfalls.  See page 17, n.16, supra.

[15] This Court also finds these ineffectiveness claims to be without merit because, as noted previously, the evidence against Petitioner was overwhelming.  Thus, Petitioner cannot demonstrate that he was prejudiced by counsel's alleged errors.

16

## VI. Conclusion

Grounds Four, Five and Six of the Petition raise discrete issues regarding Petitioner's counsel's performance during voir dire, and the Court's opinion has addressed them as such. However, the Court would be remiss if it did not also look at counsel's voir dire performance in its totality.

Although apparently permitted by Florida law, conducting "group voir dire" seems a recipe for potential trouble, especially when, as here, the same lawyer is trying to represent the interests of two different clients at the same time.[16]  But if it is going to happen, counsel must conduct meaningful voir dire for <u>both</u> clients and should not "mail it in" on the second client.  It appears that that is what happened here.  After completing voir dire for his first client, this is the entirety of the voir dire examination that counsel conducted for Petitioner:

> Again, good morning, ladies and gentlemen.  I know y'all are ready for lunch, as am I.  But we still have to pick a jury in this case.  And of course, everything that we've gone over before, as the Judge explained earlier, also applies in this case, with one very big distinction.
>
> And my client, Jackie Lee Donley, please look over at him.  And I'd like to ask you about his appearance.  First of all, you observe that my client is African American and that he is wearing prison clothes.

---

[16] For example, if there is a potential juror who the lawyer views as favorable to both of his clients, how does he decide whether or not to strike that juror in the first voir dire to "save" that juror for his second client?  If the race of the juror is an important consideration to his client (as it was to Petitioner here), does counsel try to "save" some African American jurors for Petitioner by striking them from the panel of his first client?

17

Now, we have no African Americans left in the jury pool. So, it's incumbent on me to make sure that Mr. Donley gets as fair a trial as he can possibly get. We've heard previously, Mr. Ladson, discussing problems that he may have had, he felt, because he was black and the officer that stopped him was white.

So, I want you to understand that I'm asking you at this point to -- if there's such a thing -- be as more impartial -- if that's -- I don't think there is such a thing -- but is there anybody that feels that because of the appearance of my client, Mr. Donley, either because he's a black man or because today he's wearing prison garb, is there anybody here that feels like because of that he's more likely to have committed the crime that he's with? And I want you to really search in you soul. If the answer is yes, we understand. People have certain prejudices. But we really need to know at this time if you feel like you cannot stand in judgment of Mr. Donley, would you please let me know at this time. Does anybody have that feeling? I'll ask, in the first row? In the second row, does anybody have that feeling? In the third row, you all feel you can judge Mr. Donley on the facts of this case? In the fourth row? Everybody is in agreement on this. And in the fifth row. Okay.

I think that everything else that we went over, like I stated in the earlier case, the only thing at this point that Mr. Donley is looking for is a fair shake with a fair and impartial jury. Do you all feel that you can be part of a fair and impartial jury? Okay. I thank you, very much for your time.

Ex. F at 88-90.

This was perfunctory voir dire to say the least. Moreover, Petitioner had a constitutional right to be dressed in civilian clothes and, if counsel had done his job, he could have made an effort to see that his client was properly dressed or, at least, should have

18

objected when he was not.[17]  Instead, counsel apparently took the cavalier attitude that his client, being "experienced" in the ways of the criminal justice system, should have known to put on a suit if he did not want to appear in his prison clothes.

Petitioner deserved better representation during voir dire.  If I were considering this issue de novo, I would likely find that Petitioner received constitutionally deficient assistance of counsel.  However, because there are qualifying state court decisions that appear to hold otherwise, I am constrained, under the deference that must be given to the state courts' decisions under AEDPA, to conclude that Petitioner has not established that counsel's conduct was deficient.

---

[17]  The Eleventh Circuit has articulated the importance of this constitutional protection:

> Clearly identifiable prison garb does more than clothe a defendant with suitable raiment-it also clothes him with an unmistakable mark of guilt.  Forcing a defendant to appear at trial so dressed not only is demeaning; it reinforces the fact that the defendant has been arrested and projects to the jury the mark of guilt, thus eroding the principle that the defendant is presumed innocent until proven guilty.   This subliminal advertising has no place in our system of criminal justice; a defendant is entitled to appear free of this mark of guilt.  That the jury will learn of his arrest during the course of the trial does not mitigate the harm occasioned by parading the defendant clothed in a shroud of guilt.  The Government's argument to the contrary simply is misdirected.

United States v. Harris, 703 F.2d 508, 512 (11th Cir. 1983).

Moreover, Petitioner's counsel rallied at trial and presented a competent defense.[18] Unfortunately for Petitioner, the evidence was strong. Therefore, he ultimately was not prejudiced by his counsel's poor start. Thus, the Court concludes that Petitioner is not entitled to habeas relief. If asked, however, I will grant a certificate of appealability, believing the case to be debatable among "jurists of reason."

## VII. Certificate of Appealability

This Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid

---

[18] It appears that Petitioner did not wear prison garb during the rest of the trial -- at least Petitioner does not complain that he did.

20

claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id.

Here, after consideration of the record as a whole, this Court will deny a certificate of appealability with respect to grounds one through three; however, the Court will grant a certificate of appealability with respect to grounds four through six of the Petition.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.      The Petition (Doc. #1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.      The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.      If Petitioner appeals the denial of the Petition, the Court denies a certificate of appealability with respect to grounds one through three; however, the Court grants a certificate of appealability with respect to grounds four through six of the Petition.

4.      The Clerk of the Court shall close this case.

**DONE AND ORDERED** at Jacksonville, Florida this 1st day of September, 2010.

TIMOTHY J. CORRIGAN
United States District Judge

ps 8/23
c:
Jackie Lee Donley
Counsel of Record

21